IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., as Broadcast Licensee of the September 6, 2008, UFC #88 Broadcast, | : : : : | |
| Plaintiff, | : : | CASE NO. 4:10-cv-00175-REL-CFB |
| vs. | : : : | REPORT AND RECOMMENDATION ON |
| MICHAEL KRACHT, Individually, and as officer, director, shareholder and/or principal of TAIL GATORS, LLC, d/b/a TAIL GATORS, a/k/a TAILGATORS, and TAIL GATORS, LLC, d/b/a TAIL GATORS, a/k/a TAILGATORS, | : : : : : : : | MOTION FOR DEFAULT JUDGMENT |
| Defendants. | : | |

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Clerk's No. 33), filed December 14, 2010, pursuant to Federal Rule of Civil Procedure 55(b)(2). In its Complaint (Clerk's No. 1), Plaintiff, Joe Hand Promotions, Inc. (Promotions), a closed-circuit distributor of sports and entertainment programming, asserts claims against Defendant Tail Gators, LLC, d/b/a Tail Gators a/k/a Tailgators, a business entity in Urbandale, Iowa, based on the alleged unauthorized interception or receipt, and the unauthorized broadcast, of a fight program on September 6, 2008. Specifically, Promotions asserts the following claims: violation of the Communications Act of 1934, 47 U.S.C. § 605 (Count I); and violation of the Cable Communications Policy Act of 1984, 47 U.S.C. § 553 (Count II). Promotions requests statutory damages, including enhanced damages for willful violations, and attorneys' fees and costs.

Promotions filed its Complaint on April 19, 2010. Service was made on Tail Gators on

1

May 12, 2010. Defendant failed to plead or otherwise defend.[1] Promotions filed a Motion for Default Entry against Tail Gators on October 21, 2010. Under Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of Court granted Promotions' Motion for Default Entry on October 22, 2010, and entered default against Tail Gators. (Clerk's No. 31.)

This matter was referred to the undersigned on December 20, 2010, for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the evidence and file, the Court finds and recommends as follows on the issues presented.

## I. Legal Standard for Default Judgment

Whether to grant default judgment is within a court's discretion. *Freeman v. State Farm Mut. Auto. Ins. Co.*, 436 F.3d 1033, 1036 (8th Cir. 2006); *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (citing *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996)). When "a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages." *Stephenson v. El-Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008) (quoting *American Red Cross v. Community Blood Ctr. of the Ozarks*, 257 F.3d 859, 864 (8th Cir. 2001)). It remains, however, for the court to "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lane*, 595 F.3d 868,

---

[1] In its June 29, 2010, Order, the Court advised Tail Gators, the corporate defendant, that it must be represented by counsel, and that failure to obtain counsel would result in the entry of a default against it. Pursuant to Local Rule 83.1(d)(1), the Court ordered Tail Gators to arrange for counsel to enter an appearance by July 19, 2010. When counsel did not enter an appearance for Tail Gators, or file an answer or responsive pleading, the Court granted the Renewed Motion to Strike Purported Answer of Corporate Defendant. (Clerk's No. 23.)

2

871 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 255 (Oct. 4, 2010)).

Upon default, a court determines the amount that the plaintiff is entitled to recover and gives judgment accordingly by taking "evidence when necessary or by computation from facts of record." *Stephenson*, 524 F.3d at 915 (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). After determining the amount of damages, the court may enter judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). *Id.* at 916. The plaintiff has the burden to prove uncertain damages to a reasonable degree of certainty. *American Red Cross*, 257 F.3d at 864.

With these principles in mind, the Court examines the claims that Promotions asserts in its Complaint, accepting as true the factual allegations, except for those relating to damages.

## II. Findings of Fact

In support of the application for entry of default judgment, Joe Hand, Jr., president of Promotions, provided an affidavit stating that Promotions entered into a distribution agreement in which it purchased the exclusive territorial rights to distribute to commercial establishments the Ultimate Fighting Championship #88 program, held and broadcast on September 6, 2008. (Pl.'s Aff. at 1.) Promotions marketed the sub-licensing rights to the broadcast to various entities in Iowa, allowing them to publicly exhibit the broadcast to their patrons. Tail Gators did not buy the rights from Promotions to exhibit the program, but Tail Gators nevertheless exhibited the program in its commercial establishment at 3828 100th Street, Urbandale, Iowa, on September 6, 2008.[2] *Id.* at 2.

In its Complaint, Promotions asserted the broadcast at issue originated via satellite

---

[2] At one point, Plaintiff's Affidavit refers to the year at issue as 2009, but this appears to be a scrivener's error. *See* Pl.'a Aff. ¶ 10.

uplink, and was transmitted to cable systems and satellite companies by satellite signal. Hand averred that, to the best of his knowledge, Promotions' programming cannot be mistakenly or innocently intercepted. He described some methods a "signal pirate" could use to unlawfully intercept and exhibit Promotions' programming: (1) intentionally misrepresenting a commercial establishment as a residential property, which would allow the purchase of "a pay-per-view broadcast of the Program from their cable, satellite, . . . or other Broadband provider at a residential price"; (2) ordering "the Program for their residence and moving their residential receiver to the commercial location"; (3) using technology that lets a consumer "sling programming from their personal home cable, . . . Broadband, and or satellite systems and onto their computers, which in turn can allow commercial misuse of residential programming feeds through the internet from literally anywhere"; and (4) streaming or sharing the program via broadband. *Id.* at 3. Hand further stated these "forms of theft also involve the misrepresentation of a residential location, purchase of illegal un[e]ncryption devi[c]es, and/or the purchase of illegal satellite authorization codes which are readily available on the internet and in trade publications." *Id.* (alterations added). Promotions asserts that before conducting discovery, it is "unable to determine the manner in which Defendants obtained the Broadcast." (Compl. at 5.)

Tail Gators provided evidence that on the evening of September 6, 2008, an auditor observed four television sets exhibiting the fight program at issue to approximately 55 patrons in Tail Gators, which had an estimated fire code capacity of 275 people. Promotions also provided evidence, a rate card, indicating that a commercial establishment such as Tail Gators, with a capacity of 250 to 300 people, would have paid Promotions $1,500 to broadcast the program.

Promotions contends that, "with full knowledge that the Broadcast was not to be received

4

and exhibited by entities unauthorized to do so, Defendants and/or their agents, servants, workmen and/or employees unlawfully intercepted, received and/or de-scrambled said satellite signal, and did exhibit the Broadcast" at Tail Gators "at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* at 4.

## III. Discussion

In its Complaint, Promotions seeks damages under 47 U.S.C. § 605(a), which protects communications including satellite television signals, or under 47 U.S.C. § 553(a), which protects communications offered over a cable system. As Promotions recognizes, several courts have held that 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a) are mutually exclusive. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 204-07 (3d Cir. 2001); *United States v. Norris*, 88 F.3d 462, 466-69 (7th Cir. 1996); *Joe Hand Proms., Inc., v. Groenwoldt*, No. 3:09-CV-30, slip op. at 6 n.5 (S.D. Iowa Nov. 9, 2009) (stating that single act of interception cannot violate both statutes) (citing *Charter Commc'ns Entm' t I, DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006); *TKR Cable*, 267 F.3d at 197; *Norris*, 88 F.3d at 468-69).

Promotions contends it has established that Tail Gators pirated its signal and exhibited the signal to its patrons, but without further discovery or an admission from Tail Gators, Promotions cannot establish the method Tail Gators used to pirate the signal. Rather than seeking default judgment and damages for violation of 47 U.S.C. § 553(a), Promotions elects to seek default judgment and damages on its claims for violations of 47 U.S.C. § 605(a) based on Defendant's unauthorized interception and exhibition of Promotions' communication of the September 6, 2008, fight program. Section 605 carries higher minimum statutory damages and enhanced damages than does § 553. *See J & J Sports Prods., Inc. v. Torres*, No. CIV S-10-3012

5

JAM EFB (TEMP), 2011 WL 999199, at *4 n.7 (E.D. Cal. Mar. 17, 2011) (comparing statutory damages provisions).

Promotions' choice of electing damages under § 605 does not affect the Court's calculation of damages in this matter, even assuming Promotions had a choice of electing damages under either § 553 or § 605, because the Court's recommendation for an award would be the same under either provision. Accordingly, and because the Court believes that Promotions should not be prejudiced by Tail Gators' failure to appear or defend itself in this action, the Court will assess damages under § 605. *See id.* at *4 (stating the plaintiff should not be prejudiced by the defendant's failure to appear or defend itself in the action, and statutory damages should therefore be awarded under § 605, when plaintiff sought entry of default judgment on its claims brought under § 605(a) and 553(a); plaintiff was precluded from conducting discovery to ascertain the means of transmission of the fight program due to defendant's failure to defend the action, and complaint and evidence supported a conclusion that defendant intercepted, without authorization, a transmission of the fight program and broadcast it to its patrons); *J & J Sports Prods., Inc. v. Juarez*, No. 2:10-1071 WBS KJN (TEMP), 2011 WL 221634, at *4 (E.D. Cal. Jan. 21, 2011) (same).

Section 605 prohibits the following actions:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being

6

> authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a) (alteration added). Even absent direct evidence, circumstantial evidence can support a finding that a communication was intercepted in violation of § 605(a). *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005). No factual dispute exists over Tail Gators's interception of the satellite signal and broadcast of the program to its patrons without obtaining sub-licensing rights from Promotions. For purposes of default, therefore, no factual dispute concerns the application of § 605 to the circumstances in this case. The Court finds the record establishes Promotions' entitlement to relief on its § 605 claim.

Under § 605, a prevailing plaintiff may recover either actual damages sustained as a result of a violation, or statutory damages for each violation involved, "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In this case, Promotions requests statutory damages. The statute also provides a penalty for willful violations, stating that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." *Id.*

7

§ 605(e)(3)(C)(ii) (alteration added). "Willful" as used in § 605(e)(3)(C)(ii), and comparable provisions under 47 U.S.C. § 553(c)(3), means a "disregard for the governing statute and an indifference for its requirements." *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (quoting *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)); *see Comcast of Illinois X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 947 (8th Cir. 2007) (applying definition of willfulness, "disregard for the governing statute and an indifference to its requirements," from *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985), to claim for enhanced damages under § 553(c)(3)).

Here, Promotions seeks statutory damages under § 605(e)(3)(C)(i)(II) in the amount of $10,000, the maximum allowable damages under that section, and enhanced damages under § 605(e)(3)(C)(ii) in the amount of $40,000, for a total request of $50,000. In support of its request, Promotions cites three cases that contain no analysis of the damages awards, and little or no fact descriptions. *See Joe Hand Proms., Inc. v. Pastrikos*, No. 3:10-CV-00694-JZ (N.D. Ohio Aug. 9, 2010); *Joe Hand Proms., Inc. v. TL Prods.*, LLC, Nos. 4:09CV503MLM, 4:09CV1633CAS, 2010 WL 2428031 (E.D. Mo. June 10, 2010); *DirecTV, Inc. v. Plummer*, No. 3:09-0098 (M.D. Tenn. Sept. 9, 2009). The Court finds these cases to be unpersuasive in its consideration of Promotions' request for $50,000 in statutory damages.

Promotions next suggests that in considering the company's request for enhanced statutory damages, the Court may draw an inference of willfulness based on Tail Gators' failure to appear and defend, when Promotions sought enhanced statutory damages based on allegations of willful conduct. The Court, however, has previously declined to recognize a presumption of willfulness based on a similar argument in the context of a § 553 claim, determining that the act

8

of defaulting was not relevant to a finding of willfulness and holding that evidence showing a defendant's knowledge of and indifference to the statute's prohibitions was required. *See Groenwoldt*, No. 3:09-CV-30, slip op. at 4-5. The Court finds the same reasoning applies to a finding of willfulness under § 605, and declines to apply a presumption of willfulness in this case. The Court further finds that Promotions has not shown Tail Gators' knowledge of and indifference to the statute's prohibitions. Promotions' concern that by defaulting, Tail Gators will avoid statutory damages that may otherwise be warranted, can be properly addressed through an award of statutory damages under § 605(e)(3)(C)(i)(II) rather than under § 605(e)(3)(C)(ii). *See id.* at 5 (awarding $4,000 in statutory damages under § 553(c)(3)(A)(ii), but no enhanced damages for willful conduct, where the defendant did not appear and the plaintiff was denied discovery and opportunity to prove willfulness) (quoting *Charter Commc'ns Entm't I, LLC v. Burdulis,* 367 F. Supp. 2d 16, 30 (D. Mass. 2005)). Because the record contains no evidence of willfulness, the Court respectfully recommends that no damages be awarded under § 605(e)(3)(C)(ii) for a willful violation.

Hand argues in his affidavit that Defendant's acts of piracy were "*per se* intentional" and could not occur without "willful and intentional" acts." (Pl.'s Aff. at 4.) To the extent that Promotions is arguing that where a violation of § 605 has occurred, willful conduct for purposes of the statute may be presumed, the Court has previously declined to recognize such a rule of presumption in a case where the plaintiff presented the same argument under § 553. *See Groenwoldt*, 3:09-CV-30, slip op. at 4-5 (holding that evidence demonstrating a defendant's knowledge of and indifference to the statute's prohibitions was required).

Deterrence, the financial loss to the plaintiff, and the costs that the defendant avoided

through its unauthorized actions are among the factors that courts consider in determining an award of statutory damages under § 605(e)(3)(C)(i)(II). *Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 340 (S.D.N.Y. 2009) (citations omitted); *see J & J Sports Prods., Inc. v. Angulo*, No. 08 C 2585, 2011 WL 528968 (N.D. Ill. Feb. 8, 2011) (awarding $2,000 in statutory damages under § 605(e)(3)(C)(i)(II) as reasonable under the circumstances, noting the plaintiff's request for $2,000 seemed to coincide with what the company asserted the price for the sublicense would have been for the defendants). Promotions asks the Court to consider its evidence that Tail Gators would have had to pay $1,500 to obtain Promotions' authorization to receive and broadcast the fight program to its patrons.

Having considered the above factors in relation to the facts of this case, the Court finds that a statutory damages award under § 605(e)(3)(C)(i)(II) of $5,000 is just. Such an award is sufficient to determine future violations of the statute, discourage attempts to ignore an action so as to avoid increased statutory penalties that might otherwise be imposed, and address Promotion's concerns over the commercial gains made by Tail Gators as a result of the violations. Accordingly, the Court respectfully recommends that Promotions be awarded statutory damages of $5,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II).

**IV. Costs and Attorneys' Fees**

Promotions also requests an award of costs and attorneys' fees totaling $2,750.25 under § 605(e)(3)(B)(iii) (the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails").

For costs, Promotions requests a total of $450 ($350 for filing fees and $100 for service of process), as set forth in the Attorney Affidavit in Support of Default and Costs and Fees (Clerk's No. 33-2). The Court respectfully recommends awarding Promotions costs against Tail

Gators in the amount requested, $450.

Promotions requests $2,300.25 in attorneys' fees based on hourly rates of $200 for 10.02 hours of work, for a total of $2,004, and $75 for 3.95 hours of work, totaling $296.25, all expended through December 14, 2010, the filing date of the Motion for Default Judgment. The Court finds that the amount of reasonable fees in this case is the amount claimed, totaling $2,300.25. This amount bears a reasonable relationship to the amount awarded for the statutory violation. *See Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1254-55 (8th Cir. 1983) (reducing attorney fee award from $12,000 to $8,000, where damages award was $1,500 for violation of odometer disclosure provisions). The Court respectfully recommends awarding Promotions attorneys' fees against Tail Gators in the amount requested, $2,300.25.

The Court respectfully recommends that Promotions be awarded $450 in costs and $2,300.25 in attorneys' fees, for a total of $2,750.25 for costs and attorneys' fees.

## V. Report and Recommendation

IT IS RESPECTFULLY RECOMMENDED, under 28 U.S.C. § 636(b)(1)(B), for the reasons discussed above, that Plaintiff's Motion for Default Judgment (Clerk's No. 33) be **granted in part** and **denied in part** as follows:

1. The Court respectfully recommends that default judgment be entered against Defendant Tail Gators pursuant to Federal Rule of Civil Procedure 55(b)(2) on Plaintiff's claim under 47 U.S.C. § 605. The Court respectfully recommends that Plaintiff be awarded statutory damages against Defendant Tail Gators under 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $5,000, but no damages for willful violation.

2. The Court respectfully recommends that default judgment be denied with respect to Plaintiff's claim under 47 U.S.C. § 533.

3. The Court respectfully recommends that Plaintiff's request for award of attorneys' fees and costs be granted, and Plaintiff be awarded $450 in costs and $2,300.25 in attorneys' fees, for a total of $2,750.25 for costs and attorneys' fees.

IT IS ORDERED that the parties have until April 29, 2011, to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). The Court will freely grant such extensions. Any objections filed must identify the specific portion of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 12th day April, 2011.

_____
CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE